UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN HOEFT,

        Plaintiff,        CASE NO. 14-13970
                                  HON. DENISE PAGE HOOD

v.

FORD MOTOR COMPANY,

        Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#12]

### I.    BACKGROUND

On October 15, 2014, Plaintiff Stephen Hoeft ("Hoeft") filed a Complaint against Defendant Ford Motor Company ("Ford") alleging Violations of the American With Disabilities Act ("ADA") and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA") (Count I), and Retaliation in Violation of Michigan's Worker's Disability Compensation Act ("WDCA") (Count II). (Doc # 1)  Ford filed a Motion for Summary Judgment on June 22, 2015. (Doc # 12)  The Motion was fully briefed. (Docs # 14-21)  The Court held a hearing on November 18, 2015.  For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Ford's Motion.

Hoeft began working for Ford as an assembler, hi-lo driver, and repairman at the Saline plant in 1994. In 2002, Hoeft sustained a back injury requiring two surgeries in 2002 and 2004. Each time he had a surgery he filed for worker's compensation. In 2008, Hoeft was transferred to the Dearborn truck plant to work as a floor associate. On November 5, 2008, Hoeft sustained another back injury while on the job, requiring him to go on medical leave from November 2008 through May 2010. On May 24, 2010, Hoeft returned to work with the following restrictions: "no prolonged bending and twisting, no lifting over 25 pounds, and a sit and stand option." (Doc # 14)

Due to his restrictions, Hoeft was unable to perform his job as a floor associate, and he was given a plant greeter position. The greeter position accommodated Hoeft's restrictions, and he continued to receive his regular hourly rate of pay and maintained his "floor associate" classification. In early 2011, Hoeft took approximately nine months of medical leave for various reasons. The greeter position was eliminated in 2011. Hoeft was then assigned a job in the Human Resources ("HR") department as a clerk doing data entry, filing, making copies, and assisting with mail delivery and supplies. The clerical position accommodated Hoeft's restrictions, and he continued to receive his regular hourly rate of pay and maintained his "floor associate" classification. Ford claims that this position was created specifically to accommodate Hoeft.

According to a Declaration of Steve Wilcox ("Wilcox"), Labor Relations Manager at the Dearborn plant, and the deposition testimony of Jenny Torony ("Torony"), HR Manager at the Dearborn plant, in 2013, Ford's finance department instructed the Dearborn plant to remove 167 positions, two of which had to be removed from the HR department, as part of a budgetary rebalancing task. (Doc # 12-3, Pg ID 250; Doc # 17, Pg ID 347-48) Wilcox and Torony assert that they decided to eliminate two light-duty clerical positions that had been created to allow employees who could not perform their regular duties to work and earn a full paycheck because these positions were not necessary to the functioning of the HR department. (Doc # 12-3, Pg ID 251)

Wilcox and Torony decided to eliminate Hoeft's position and T.G.'s position. T.G. was an hourly employee with restrictions that were not due to a work-related injury. *Id.* There was another light-duty position that was not eliminated, which was occupied by P.R.. *Id.* P.R. was an hourly employee who had been injured in a fall at work and also had work restrictions. *Id.* P.R. had been working in this position since 2010, and Ford maintains that the duties that P.R. was performing provided more value to Ford than the duties that Hoeft and T.G. were performing. *Id.* at 251-52. Ford claims that Wilcox and Torony made the decision to eliminate these two positions in the first quarter or early in the second

quarter of 2013, and that they set an approximate date of April 15, 2013 for Hoeft's position to be eliminated. *Id.* at 252.

Torony became Hoeft's supervisor in mid-January 2013. Hoeft filed for medical leave due to depression in April 2013. Ford contested whether his depression was work-related. As a result of the dispute, Hoeft hired an attorney and filed a worker's compensation claim in June 2013. From April 2013 to August 2013, Hoeft was on leave. In August 2013, Hoeft attempted to return to work, at which time Torony informed him that there was no work available for him in the HR department. Hoeft claims that Torony told him on August 6, 2013 that she had no work for him because he made a false worker's compensation claim against her that he got hurt in HR. (Doc # 16, Pg ID 329)

Hoeft was placed back on leave on August 7, 2013, which is what his doctor had ordered prior to him attempting to return to work. Hoeft is currently on medical leave, has continued to receive worker's compensation benefits, and is eligible to return to work at Ford if there is a job available that meets his restrictions.

Hoeft claims that Ford violated the ADA and PWDCRA when it eliminated his clerical position despite the fact that he had been cleared to work after Ford ordered him to undergo an independent medical evaluation in August 2013. Hoeft

further claims that Ford retaliated against him in violation of the WDCA for hiring an attorney and filing a worker's compensation claim in June 2013.

Ford argues that it did not violate the ADA or PWDCRA because it created Hoeft's clerical position to temporarily accommodate Hoeft's restrictions, something not required under the ADA or PWDCRA. Ford further argues that it did not violate the WDCA because the decision to eliminate Hoeft's position was made at least a month before Hoeft hired an attorney to help him with his worker's compensation claim. Ford maintains that it has reasonably accommodated Hoeft since 2008, that it had a legitimate reason for eliminating his clerical position, and that there is no evidence of discriminatory or retaliatory animus against Hoeft.

## II. STANDARD OF REVIEW

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Id.* at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant meets this burden, the nonmoving party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 Fed. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III. ANALYSIS

### A. Failure to Accommodate Claim

Hoeft argues that Ford failed to reasonably accommodate him by not maintaining him in a light-duty clerical position. Hoeft claims that his clerical position was permanent and not temporary. He further claims that this accommodation was still possible in August 2013 and would not have created an undue burden for Ford.

Ford argues that it reasonably accommodated Hoeft for years, granting him medical leave totaling nearly five years since November 2008, as well as providing him with light-duty work that comported with his medical restrictions when such work was available. Ford further argues that Hoeft's clerical position was light-duty "make work" created especially for Hoeft in order to accommodate his restrictions, and Ford was not obligated to continue this accommodation indefinitely when such an accommodation would not have been required under the ADA or PWDCRA in the first place.

The ADA and PWDCRA "share the same purpose and use similar definitions and analyses," and Michigan courts "have relied on the ADA in interpreting the PWDCRA." *Chiles v. Mach. Shop, Inc.*, 238 Mich. App. 462, 472 (1999). For purposes of this Motion, the analysis under each is the same.

"[C]laims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). When the plaintiff bases his claim upon direct evidence, the Sixth Circuit analyzes the claim under the following framework:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Id.* at 869. "In performing a reasonable-accommodation analysis under the ADA, it is the plaintiff's duty to propose an accommodation that is objectively reasonable to employers generally, and then the burden shifts to the employer to show that the accommodation would impose an undue burden with regard to the specific situation." *Wardia v. Justice & Pub. Safety Cabinet Dep't of Juvenile Justice*, 509 Fed. App'x 527, 531 (6th Cir. 2013).

A "reasonable accommodation" under the ADA may include "reassignment to a *vacant* position." *See* 42 U.S.C. § 12111(9)(B) (emphasis added). However, the ADA does not require an employer to displace a co-worker in order to accommodate a disabled worker. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634

8

(6th Cir. 1998). Where the plaintiff claims that he should have been accommodated by reassignment to another position, the plaintiff must identify the specific job he seeks and demonstrate that he is qualified for that position. *VeuCausovic v. Ford Motor Co.*, No. 11-15488, 2013 WL 317937, at *7 (E.D. Mich. Jan. 28, 2013).

"The ADA does not require an employer to create a new position to accommodate a disabled worker or . . . create a permanent light-duty post when none previously existed." *Brown v. Chase Brass & Copper Co.*, 14 Fed. App'x 482, 488 (6th Cir. 2001). Employers are not obligated to convert a temporary light-duty position created for a recuperating employee into a permanent position. *Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 730 (6th Cir. 2000); *see also Breier v. ITT Auto., Inc.*, 98 Fed. App'x 458, 460 (6th Cir. 2004) (finding that employer is not required to make light-duty position it created into permanent position); *Norsworthy v. Kroger Co.*, 202 F.3d 269 (6th Cir. 2000) (finding that employer is not required to keep employee in a specially-created, temporary position indefinitely). As the court explained in *VeuCausovic*,

> [t]hat Defendant Ford accommodated Plaintiff . . . by first placing him on a number of paid leaves of absence and then finding a light-duty clerical job for him in its accounting office, which he held for eight years, does nothing to establish Plaintiff's current ADA claim. While an employer should show patience when an employee first falls sick, if an employer bends over backwards to accommodate a disabled worker[,] it must not be punished for its generosity by being deemed

9

> to have conceded the reasonableness of so far-reaching an accommodation.

*VeuCausovic*, 2013 WL 317937, at *6.

Hoeft has not met his burden to demonstrate a reasonable accommodation that would have allowed him to perform the essential functions of his employment, "including the existence of a vacant positon for which he is qualified." *Selecki v. Gen. Motors*, No. 13-CV-11300, 2015 WL 1286961, at *5 (E.D. Mich. Mar. 20, 2015) (internal quotations omitted). Even assuming, without deciding, that Hoeft's clerical position was permanent and not temporary "make work," Hoeft has failed to come forward with any evidence showing that Ford had an available clerical position in August 2013. At his deposition, Hoeft testified that he was unaware of any available position at Ford that he could perform, and that he hadn't done anything to obtain a job in a different Ford plant. (Doc # 12-2, Pg ID 160) Hoeft points to two positions, but both were occupied by other employees, P.R. and Team Leader Tom Buchanan. Ford was not required to displace P.R. or Buchanan in order to further accommodate Hoeft. Torony testified that she was not aware of any available positions in August 2013. (Doc # 21-3, Pg ID 498) She also testified that Hoeft's case was considered on more than one occasion at monthly case management meetings for the purpose of attempting find work for him within his restrictions. *Id.* at 500-01, 504.

Even viewing the evidence in the light most favorable to Hoeft, Ford accommodated Hoeft with nearly five years of paid leave and light-duty greeter and clerical positions when available. It is undisputed that Ford continues to accommodate Hoeft with medical leave in lieu of termination, and Hoeft is eligible to return to work if there is a job available that meets his restrictions. "[A] leave of absence constitutes a reasonable accommodation." *Selecki*, 2015 WL 1286961, at *5 (citing *Tubbs v. Formica Corp.*, 107 Fed. App'x 485, 488 (6th Cir. 2004)).

The Court grants Ford's Motion for Summary Judgment on the failure to accommodate claim.

### B. Disability Discrimination Claim

Hoeft seems to also argue that the decision to eliminate his light-duty position constituted disability discrimination. Ford responds that Hoeft cannot establish a *prima facie* case of discrimination, and that even if he could, Ford had a legitimate business reason for eliminating the position—the rebalancing task during which two HR positions were eliminated due to budgetary constraints.

At the *prima facie* stage, Hoeft would have to show the following in order for this discriminatory discharge claim to survive summary judgment: (1) that he is disabled; (2) that he is otherwise qualified for the position with or without reasonable accommodation; (3) that he suffered an adverse employment decision; (4) that Ford knew or had reason to know if his disability; and (5) that either the

position remained open, he was replaced by a non-disabled person, or similarly situated non-disabled employees were treated more favorably. *See Deister v. AAA Auto Club of Michigan*, 91 F. Supp. 3d 905, 918 (E.D. Mich. 2015), *aff'd sub nom. Deister v. Auto Club Ins. Ass'n*, 647 Fed. App'x 652 (6th Cir. 2016).

Hoeft cannot establish the fifth prong of his *prima facie* case. It is undisputed that his clerical position was eliminated and did not remain open. Hoeft was not replaced by a non-disabled person. Hoeft has failed to show that similarly situated non-disabled employees were treated more favorably. Hoeft points only to P.R. and claims that P.R. was treated more favorably because he was given and allowed to remain in a clerical position similar to Hoeft's. P.R., however, is also disabled; like Hoeft, P.R. had been previously injured on the job—a fact that Hoeft acknowledges and is undisputed.

The Court grants Ford's Motion for Summary Judgment on any disability discrimination claim.

### C. Retaliation Claim

Hoeft claims that Ford retaliated against him by eliminating his clerical position and placing him on a "no work available" status after he hired an attorney in June 2013 to help him with his worker's compensation claim.

Ford argues that Hoeft cannot establish a *prima facie* case of retaliation because the decision to eliminate his position was made at least a month before

Hoeft allegedly hired his attorney. Ford further argues that, even if Hoeft has established a *prima facie* case, Ford had a legitimate reason for eliminating the light-duty clerical position. Ford asserts that Hoeft has presented no evidence that this legitimate reason is a pretext.

To establish a *prima facie* case of retaliation under Michigan's Worker's Disability Compensation Act ("WDCA"), an employee who has suffered a work-related injury must present evidence showing that: (1) the employee asserted a right to worker's compensation benefits, (2) the employer knew that the employee asserted his right to worker's compensation benefits, (3) the employer took an employment action adverse to the employee, and (4) there was a causal connection between the plaintiff's assertion of his right to worker's compensation benefits and the adverse employment action. *Dortman v. ACO Hardware, Inc.*, 405 F. Supp. 2d 812, 822 (E.D. Mich. 2005); *Chiles*, 238 Mich. App. at 470.

When a plaintiff circumstantially establishes a rebuttable *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its adverse employment action. If the defendant produces a legitimate, non-retaliatory reason for its action, the plaintiff must demonstrate that the defendant's reason is a pretext for retaliation. A plaintiff can establish that the employer's proffered reason is pretextual by demonstrating that the reason (1) had no basis in fact; (2) was not the actual factor motivating the decision; or (3) was

insufficient to justify the decision. *See Cuddington v. United Health Servs., Inc.*, 298 Mich. App. 264, 277 (2012).

Hoeft has established a *prima facie* showing of retaliation under the WDCA. Hoeft suffered from depression, which he claims is work-related, and he filed for WDCA benefits for his leave from April 2013 to August 2013 through his attorney in June 2013. Ford does not dispute that it knew that Hoeft engaged in this protected conduct, or that it took an employment action adverse to Hoeft. Ford argues instead that Hoeft cannot show that his worker's compensation claim and the elimination of his clerical position are causally connected.

Ford asserts that the decision to eliminate his position was made at least a month before Hoeft allegedly hired his attorney. However, it is undisputed that Hoeft was not informed of this decision until August 6, 2013 during the conversation with Torony. Hoeft testified that Torony told him that she had no work for him because he made a false worker's compensation claim against her that he got hurt in HR. (Doc # 16, Pg ID 329) Torony testified that she could not recall whether she discussed Hoeft's worker's compensation claim during that conversation with him; she only remembered telling him that she had no work for him. (Doc # 17, Pg ID 352-53) Torony also testified that she remembers Hoeft was on medical leave in April 2013 and remembers there was "some disagreement with worker's comp, whether it was personal or occupational." *Id.* at 378-79. She

14

testified that worker's compensation representative Michalein Robertson had provided her with this information. *Id.* at 379. Torony further testified that there exists one "rebalance document that would have the elimination of the positions," *id.* at 368, but there is nothing further in the record regarding the content or date of this document. The Court finds that, viewing the evidence in the light most favorable to Hoeft, there remains a question of material fact regarding when the decision to eliminate Hoeft's clerical position was made. The Court concludes that Hoeft has sufficiently established a causal connection between his worker's compensation claim through his attorney and the elimination of his clerical position at this stage, as well as a *prima facie* showing of retaliation under the WDCA.

Ford has in turn provided a legitimate, non-discriminatory reason for eliminating Hoeft's position. Ford claims that the finance department ordered the Dearborn plant to eliminate two positions in HR as part of a budgetary rebalancing task affecting 167 positions. Ford points to a comparator, P.R., to show that it kept another disabled worker in the HR department because his work added more value to the company.

The Court turns to examining whether Hoeft has sufficiently established that Ford's proffered reason is pretextual. Hoeft argues that Torony's statement that she had no work for him because he made a false worker's compensation claim

15

against her that he got hurt in HR, along with the context in which it was made, raises a genuine issue of material fact as to Ford's retaliatory motivation. Ford argues that Torony's alleged statement is at most a stray remark that does not indicate animus for the exercise of worker's compensation rights, but rather, for false claims.

In discrimination cases, courts examine statements allegedly showing employer bias by considering "whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the act of termination." *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994); *see also Rose v. Nat'l Cash Register Corp.*, 703 F.2d 225, 227-28 (6th Cir. 1983), *cert. denied,* 464 U.S. 939 (1983), *rev'd in part on other grounds sub nom. Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985).

Hoeft testified that Torony told him on August 6, 2013 that she had no work for him specifically because he made a false worker's compensation claim against her that he got hurt in HR. (Doc # 16, Pg ID 329) Torony testified that she was the one who decided to eliminate Hoeft's clerical position. (Doc # 17, Pg ID 348) Viewing the evidence in the light most favorable to Hoeft, Torony's alleged comment was made by a decision maker. It was also related to the decision-

16

making process, since it was allegedly made in the context of Torony explaining why she no longer had any work available for Hoeft. Hoeft does not identify any other retaliatory statements by Torony or anyone else at Ford, so the alleged comment was isolated. Ford claims that the alleged statement at most shows animus toward false statements. However, the Court finds that, viewed in the light most favorable to Hoeft, the alleged statement communicates that the reason why there was no longer any work available for Hoeft was because he made a worker's compensation claim. The alleged statement was made on August 6, 2013, at the time that Ford first communicated to Hoeft that the company no longer had work available for him. Under these circumstances, the Court finds that a reasonable juror could conclude that retaliation was a motive for eliminating Hoeft's clerical position.

The Court denies Ford's Motion for Summary Judgment on the retaliation claim.

### D. Failure to Engage in Interactive Process Claim and ADA Retaliation Claim

In his Response, Hoeft raises the argument that Ford failed to engage in the interactive process. Also in his Response, Hoeft asserts an ADA retaliation claim. These were not claims asserted in his Complaint, and the Court declines to review them. Courts are not required to address allegations first raised in summary judgment motions. *See City of Columbus, Ohio v. Hotels.com, L.P.*, 693 F.3d 642,

650 (6th Cir. 2012) ("The district court did not err in declining to address [a new] claim because it was raised for the first time in response to the [defendants'] motion for summary judgment.")

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant Ford Motor Company's Motion for Summary Judgment **(Doc # 12)** is **GRANTED IN PART AND DENIED IN PART** as to the retaliation claim under the Michigan Worker's Disability Compensation Act only**.**

IT IS FURTHER ORDERED that this matter is set for a Final Pretrial Conference on June 6, 2017 at 2:00 p.m.. All parties with authority to settle must appear at the conference. The Proposed Joint Final Pretrial Order under Local Rule 16.2 must be submitted by May 30, 2017.

IT IS FURTHER ORDERED that the jury trial is set for July 11, 2017 at 9:00 a.m.

Dated: March 31, 2017                s/Denise Page Hood
                                     Chief, U.S. District Court


I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2017, by electronic and/or ordinary mail.

                                     s/LaShawn R. Saulsberry
                                     Case Manager